305 So.2d 713 (1974)
COASTAL ERECTION COMPANY, INC.
v.
MILAN ENGINEERING CO. et al.
No. 6513.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1974.
Rehearing Denied January 14, 1975.
George C. Stringer, Jr., New Orleans, for plaintiff-appellant.
*714 George A. Kimball, Jr., New Orleans, for defendant-appellee American Sugar Refinery and American Employer's Ins. Co.
A. W. Wambsgans, Metairie, for defendant-appellee Milan Engineering Co.
Before GULOTTA, BOUTALL and BEER, JJ.
BEER, Judge.
The sole issue which must be decided in this case is whether or not the plaintiff-appellant had, in May of 1969, taken a step in the prosecution of his case against defendants as a result of the following generally undisputed chronologically listed facts:
February 4, 1966, plaintiff files suit to collect $25,748.99 plus interest, attorney fees and costs against various defendants alleging non payment for the furnishing of labor and materials. The suit also seeks recognition and maintenance of labor and material man's liens and privileges on the property upon which the improvements had been made.
April 1, 1966, defendant American Sugar Company files answer.
December 14, 1967, plaintiff-appellant files amending petition.
December 21, 1967, Milan Engineering Company, Inc. and American Employers Insurance Company file answer.
May 19, 1969, plaintiff-appellant's counsel mails letter to Clerk of Court which states as follows:
"All issues in this suit, which was filed by Melvyn J. Perez on February 4, 1966, have been joined for some time, and the case is ready for trial.
Mr. Perez and I, as attorneys for plaintiff Coastal Erection Company, Inc., and our clients are extremely anxious to have this case tried and decided as soon as possible.
We would appreciate your requesting Judge Nobile to fix this case for trial on the earliest available date. We believe the case can be tried in one day.
With special thanks for your courtesy and cooperation, I am
 Sincerely yours,"
May 22, 1969, clerk's office responds with typed unsigned notation at bottom of plaintiff-appellant's counsel's letter as follows:
"In reference to the above it will be necessary for you to send in a Motion to Fix for Trial in order for the Judge to set this matter."
May 26, 1969, plaintiff-appellant's counsel prepares and mails to the clerk's office a "Motion to Fix Case for Trial on Merits", certifying that he has sent a copy of same to each other attorney of record.
May 26, 1969, Motion to Fix Case for Trial on Merits is physically received in the clerk's office and physically placed in the file folder or "record" of this case but is not marked "filed" by the Clerk of Court nor is it submitted to the District Judge for the order to be signed. Apparently at that point in time the following notation was penciled on the document: "Motion not filed due to costs owed and in connection therewith work pending bill [sic] sent on May 27, 1969. Ann Dragon, Dy. Clerk."
May 27, 1969, a bill from the clerk's office was apparently mailed to plaintiff-appellant's counsel showing the name and number of the case and containing the following statement:
"Additional Court cost due on the above numbered entitled suit . . . $20.00 Prompt attention expected otherwise proceedings will be held until such time as payment is received."
From May 27, 1969 to February 22, 1973 no action took place which could properly *715 be considered a step in the prosecution of the case within the applicable provisions of the Louisiana Code of Civil Procedure Article 561, although on March 13, 1970 the Clerk did accept for filing and did file a Motion and Order for substitution of attorneys on behalf of plaintiff-appellant.
Plaintiff-appellant does not contend that the Motion filed March 13, 1970 is a step in the prosecution within the definition necessary to toll the statute but does point out that it was accepted and filed by the Clerk without any requests for payment of costs. This is important because it signals an apparent inconsistency from the procedure followed when the Motion to Fix Case for Trial was not filed by the Clerk, but only physically placed in the file folder for this case and, accordingly, could be a basis upon which plaintiff-appellant's counsel was caused to continue to rely on the incorrect belief that both pleadingsobviously sent by mailhad been properly and acceptably filed for all purposes. This is particularly important to plaintiff-appellant's contentions when considered with the testimony of its then attorney who denies ever receiving a bill for additional costs not withstanding the presence in the record of the copy of the bill from the clerk's office dated May 27th, 1969. At any event, no payment was made and, of course, none was received.
To this generally undisputed factual background, we must apply the law set forth in L.S.A.-C.C.P. Article 561 and its source, Louisiana Civil Code Article 3519, requiring some action in the trial court, intended to hasten the suit to judgment in order to interrupt the five year period of non prosecution required for ex parte dismissal. There is no doubt that a Motion to Fix Case for Trial, properly filed, is clearly one that is intended to hasten the suit to judgment and we so find. (Just as clearly, the Motion and Order for substitution of plaintiff's attorneys can not be held to be intended to hasten the suit to judgment nor is this seriously advanced by appellant). But the finite issue in this case is whether the chronologically recounted events constitute a "step" in the trial court which is also a vital requisite.
Notwithstanding the equitable considerations required by the peculiar facts of this case, we are constrained to hold that the necessary ingredient of a "step" in the trial court is missing here.
Harsh though it may seem to the rushed and often harried attorney, the principle stated in Bell v. Staring, 170 So. 502 is applicable here. Specifically:
"If plaintiff has it within his power to take some action to further his suit to a final judgment, no neglect or fault of a court official, nor misapprehension of fact on his part, will justify his failure to take steps in the prosecution of his suit for more than five years. Nix v. Lancaster and Wight, Receivers, 3 La. App. 402; Landry v. Dore (La.App.) 149 So. 321."
Plaintiff-appellant may, indeed, have been lulled into a false sense of security by the superficially re-assuring events upon which his counsel apparently relied. Yet, the alternative to permitting equitable considerations to over balance the strict holding in Bell v. Staring is chaos in the clerk's officeto the ultimate detriment of all litigants.
The convenience and general dependability of the mails and the usual cooperative efforts of the personnel in the office of the various Clerks of Court may beckon the busy attorney to rely entirely upon them. Yet, the final responsibility for seeing to it that his pleadings are actually filed rests ultimately and, indeed, exclusively, with the attorney. Even when he may be understandably and unintentionally diverted from this responsibility, the obligation nevertheless relentlessly exists.
In Johnson v. State Farm Mutual (La. App.) 241 So.2d 799 the court adopted as part of its opinion the following excerpts *716 from 51 Am.Jur.2d, paragraph 19 at page 603:
"Statutes of limitation find their justification in necessity and convenience rather than in logic, and it has been said that they represent expedience rather than principles. These statutes create repose and are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have disappeared or died, and evidence has been lost. Accordingly, the fact that the barred claim is a just one or has the sanction of a moral obligation does not exempt if from the statute of limitations. The statutes are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay. They apply with full force to the most meritorious claims, and courts cannot refuse to give the statute effect merely because it seems to operate harshly in a case involving an obviously meritorious claim."
We are obliged to hold that the plaintiff has failed to take the necessary "step" as required in L.S.A.-C.C.P. Article 561 and its source La.C.C. Article 3519 and, accordingly, we affirm the judgment of the Twenty-Fifth Judicial District Court dismissing the claim of Coastal Erection, Inc. at its costs. Costs of this appeal to be paid by plaintiff-appellant.
Affirmed.
GULOTTA, J., dissents.
GULOTTA, Judge (dissenting).
The issue in this case is whether the motion to fix the matter for trial which was placed in the record but not "filed" nor signed by the judge constitutes a step in the prosecution.
Under the circumstances of this case, I am of the opinion that it does constitute such a step and that plaintiff's cause of action has not been abandoned. Accordingly, I would reverse and remand the matter for further proceedings.
It is significant that the motion was not returned to the attorney by the clerk with a notation that it was not being filed because costs were owed. The notice mailed to the attorney dated May 27, 1969 does not clearly state that the clerk refused to file the motion to fix for nonpayment of costs. The notice could well be construed to mean that any subsequent proceedings would be held unless additional costs were advanced. That notice reads as follows:
"Additional court costs due in the above numbered entitled suit . . . $20.00
Prompt attention expected otherwise proceedings will be held until such time as payment is received."
Admittedly, it is the attorney's responsibility to see that pleadings are filed. However, in the instant case, the failure of the clerk to return the unsigned motion together with the vague notation sent to the attorney by the clerk, in my opinion, might very well have lulled the attorney into a belief that the motion to fix was filed and that any further subsequent documents would not be filed without the advance of additional court costs.
Any misunderstanding could have been avoided by the clerk returning the motion to the attorney with a notation that unless additional costs were advanced, the motion to fix would not be filed.
Accordingly, I respectfully dissent.